688 A.2d 569

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 68, AFL–CIO, D.R.B.A. EMPLOYEES ASSOCIATION A/W INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 68, AFL–CIO, AND OLIVER TWIST, JUDITH TWIST, KEVIN BAILEY, MARK P. DESORBO, DAVID R. OAT, DAVID A. CUSICK, JOHN M. BUNTING, A.R. SIMMONS, J. DAVID JOHN-

SON, ROY S. MACCULLOCH, DANIEL A. SLATER, SR., GER-
ALD H. FOSTER, SR., AND DAVID E. BARNETT ON BEHALF
OF THEMSELVES AND ALL OTHER PERSONS SIMILARLY
SITUATED, PLAINTIFFS–RESPONDENTS, v. THE DELA-
WARE RIVER AND BAY AUTHORITY, DEFENDANT–APPEL-
LANT.

Argued September 10, 1996—Decided February 11, 1997.

*Wayne J. Positan* argued the cause for appellant (*Lum, Danzis, Drasco, Positan & Kleinberg*, attorneys; *Domenick Carmagnola* and *Christina Silva Lee*, on the briefs).

*Raymond G. Heineman* argued the cause for respondents (*Kroll & Heineman*, attorneys).

*John A. Zagorski* submitted a brief on behalf of amicus curiae Delaware River Port Authority (*Mr. Zagorski*, attorney; *Mr. Zagorski* and *Roxanne P. La Roc*, on the brief).

*Hugh H. Welsh* submitted a brief on behalf of amicus curiae The Port Authority of New York and New Jersey (*Mr. Welsh*, attorney; *Mr. Welsh* and *Donald F. Burke*, on the brief).

*Gerald P. Lally*, General Counsel, submitted a letter brief on behalf of amicus curiae Waterfront Commission of New York Harbor.

The opinion of the Court was delivered by

POLLOCK, J.

This appeal raises two issues. The first is whether the New Jersey courts have jurisdiction over a Congressionally approved interstate ("CAI") compact, specifically the compact between the states of New Jersey and Delaware ("the Compact") creating the Delaware River and Bay Authority (the "DRBA"). If so, the second issue is whether the laws of New Jersey and Delaware are substantially similar concerning the right of public employees to negotiate collectively.

## I.

The DRBA is a bi-state agency created by the Compact between New Jersey and Delaware and approved by Congress. *N.J.S.A.* 32:11E–1; *Del.Code Ann.* tit. 17, § 1701; *Pub.L.* 87–678, 76 *Stat.* 560 (1962). New Jersey and Delaware created the DRBA to advance their economic development and to improve the flow of traffic between the two states. *N.J.S.A.* 32:11E–1. Toward that end, the DRBA operates crossings between the two states including the Delaware Memorial Bridge and the Cape May–Lewes Ferry. *Delaware River and Bay Authority v. International Org., etc.*, 45 *N.J.* 138, 140, 211 *A.2d* 789 (1965) ("*International Org.*").

Congress approved the Compact in 1962. *Pub.L.* 87–678, 76 *Stat.* 560. This case concerns the duty of the DRBA to negotiate collectively with its employees.

Among the many powers of the DRBA is the power in Article VII, Section (e) to:

[A]ppoint, or employ, such other officers, agents, attorneys, engineers and employees as it may require for the performance of its duties and to fix and determine their qualifications, duties, compensation, pensions, terms of office and all other conditions and terms of employment and retention.

When the DRBA hires employees, it provides them with a copy of its Personnel Manual. Article XIV of the Manual states:

Upon accepting a position ... with the Authority, an individual becomes a public or governmental employee ... [i]n this connection, Authority employees have no right to incite, organize, conduct or participate in any strike, slowdown, or impediment to work against the Authority ... and neither does the Authority have the obligation to engage in collective bargaining with its employees or their chosen representative as may be unusual [sic] and legally done in private individual employment.

Although the DRBA refuses to recognize any obligation to bargain collectively with International Union of Operating Engineers, Local 68, AFL–CIO ("Local 68"), it recognizes that its employees may join labor unions. Thus, Article XV of the Manual provides:

The Authority fully recognizes the right of its employees to join a labor union of their own choosing and to organize, present and make known to the Authority any complaint or grievance which an employee might have in connection with employment....

On August 25, 1993, the D.R.B.A. Employee Association ("the Association"), representing ninety-eight DRBA employees, voted to affiliate with Local 68, a labor organization. On August 7, 1993, Local 68 submitted a written request to the DRBA, seeking recognition as the collective-negotiation representative for those employees previously represented by the Association. The DRBA denied that request. Between July 19 and September 9, 1993, a majority of DRBA employees signed authorization cards designating Local 68 as their exclusive representative. On October 7, 1993, Local 68 requested recognition as the collective-negotiation representative. The DRBA did not respond.

Local 68 then instituted this action. The complaint alleged that the DRBA's refusal to recognize Local 68 as the collective-negotiation representative of certain DRBA employees interfered with the employees' rights under the New Jersey Constitution and the labor laws of New Jersey and Delaware. Finding that it lacked jurisdiction to hear the matter and to grant the requested relief, the Chancery Division dismissed the complaint.

The Appellate Division reversed, holding that the Chancery Division had jurisdiction and that it could grant the requested relief. Essential to that holding was the Appellate Division's conclusion that the labor laws of New Jersey and Delaware were complementary and parallel. We granted certification, 143 *N.J.* 311, 670 *A.*2d 1055 (1996), and now affirm.

## II.

Article I, Section 10, Clause 3 of the United States Constitution (the "Compact Clause") empowers states to enter into interstate compacts. *U.S. Const.* art. I, § 10, cl. 3. The Compact Clause provides "[n]o State shall, without the consent of Congress, ... enter into any Agreement or Compact with another state...." *Ibid.* That language is broad enough to prohibit interstate compacts entered without the consent of Congress. In practice, the clause applies only to those compacts that might alter the political power of the affected states, and thus interfere with the supremacy of the United States. *Cuyler v. Adams,* 449 *U.S.* 433, 440, 101 *S.Ct.* 703, 707, 66 *L.Ed.*2d 641, 649 (1981) (holding Compact Clause does not apply to agreements not "directed to the formation of any combination tending to the increase of political power in the States, which may encroach upon or interfere with the just supremacy of the United States"); *Virginia v. Tennessee,* 148 *U.S.* 503, 519–21, 13 *S.Ct.* 728, 734–35, 37 *L.Ed.* 537, 543 (1893) (distinguishing those compacts not encroaching upon federal power from those that may encroach upon that power).

Through interstate compacts, states can establish bi-state agencies. On receiving the consent of Congress, the agency becomes a

creature of the creator states and the federal government. *Hess v. Port Auth. Trans–Hudson Corp.*, 513 *U.S.* 30, ——, 115 *S.Ct.* 394, 400, 130 *L.Ed.*2d 245, 255 (1994). Generally speaking, the mission of such an agency is to address "interests or problems that do not coincide nicely either with the national boundaries or with State lines [or] . . . interests that may be badly served or not served at all by the ordinary channels of National or State political action." *Ibid.*

■ Once sanctioned by Congress, a compact becomes a "law of the Union." *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 54 *U.S.* (13 *How.*) 518, 566, 14 *L.Ed.* 249, 269 (1851). "Because congressional consent transforms an interstate compact within [the Compact Clause] into a law of the United States, . . . the construction of an interstate agreement sanctioned by Congress under the Compact Clause presents a federal question." *Cuyler, supra,* 449 *U.S.* at 438, 101 *S.Ct.* at 707, 66 *L.Ed.*2d at 648. *Accord Carchman v. Nash,* 473 *U.S.* 716, 719, 105 *S.Ct.* 3401, 3403, 87 *L.Ed.*2d 516, 520 (1985). Thus, the consent of Congress transforms the States' agreement into federal law under the Compact Clause. *Cuyler, supra,* 449 *U.S.* at 440, 101 *S.Ct.* at 708, 66 *L.Ed.*2d at 649.

■ The DRBA argues that its Compact is a federal law and that only federal courts have jurisdiction to construe the compact. We must first determine therefore whether the compact is a federal law. If so, the next question is whether compacts deemed federal laws are subject to the jurisdiction only of the federal courts or to the concurrent jurisdiction of state courts.

One of the primary goals of the Compact is to improve the flow of traffic between Delaware and New Jersey. *N.J.S.A.* 32:11E–1. Congress's interest in regulating interstate commerce renders the subject matter of the Compact appropriate for congressional legislation. *U.S. Const.* art. I, § 8, cl. 3. Thus, the Compact qualifies as a "congressionally sanctioned interstate compact the interpretation of which presents a question of federal law." *Cuyler, supra,* 449 *U.S.* at 442, 101 *S.Ct.* at 709.

■ We recognize that the United States Supreme Court has original and exclusive jurisdiction in controversies between two or more states. 28 *U.S.C.A.* § 1251(a). *See Kansas v. Colorado,* 514 *U.S.* 675, 115 *S.Ct.* 1733, 131 *L.Ed.*2d 759 (1995) (invoking original jurisdiction over suit filed by one state against another relating to terms of CAI compact); *Texas v. New Mexico,* 462 *U.S.* 554, 103 *S.Ct.* 2558, 77 *L.Ed.*2d 1 (1983) (same); *Guarini v. New York,* 215 *N.J.Super.* 426, 521 *A.*2d 1362 (Ch.Div.), *aff'd,* 215 *N.J.Super.* 293, 521 *A.*2d 1294 (App.Div.1986), *cert. denied,* 484 *U.S.* 817, 108 *S.Ct.* 71, 98 *L.Ed.*2d 34 (1987) (refusing to assume jurisdiction over suit between two states, concluding that case was for exercise of original and exclusive jurisdiction by United States Supreme Court). Absent a controversy between two states or an express provision in a federal statute excluding concurrent jurisdiction, however, state courts may exercise jurisdiction over cases arising under federal law. *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 *U.S.* 473, 477, 101 *S.Ct.* 2870, 2875, 69 *L.Ed.*2d 784, 791 (1981); *Charles Dowd Box Co. v. Courtney,* 368 *U.S.* 502, 507–08, 82 *S.Ct.* 519, 523, 7 *L.Ed.*2d 483, 487 (1962). Nothing in the "federal system prevents state courts from enforcing rights created by federal law." *Courtney, supra,* 368 *U.S.* at 507, 82 *S.Ct.* at 522, 7 *L.Ed.*2d at 487.

For years, moreover, both federal and state courts have construed the terms of interstate compacts. *See e.g., NYSA–ILA Vacation & Holiday Fund v. Waterfront Comm'n of New York Harbor,* 732 *F.*2d 292, 298 (2d Cir.), *cert. denied,* 469 *U.S.* 852, 105 *S.Ct.* 175, 83 *L.Ed.*2d 109 (1984) (holding congressional approval of Waterfront Commission Compact transformed it into federal law); *Utah Int'l Inc. v. Intake Water Co.,* 484 *F.Supp.* 36, 42–43 (D.Mont.1979) (rejecting argument that federal jurisdiction over CAI compact construction cases is exclusive); *Eastern Paralyzed Veterans Ass'n, Inc. v. City of Camden,* 111 *N.J.* 389, 545 *A.*2d 127 (1988). At no time has the United States Supreme Court ruled that state courts do not have jurisdiction to construe CAI compacts. Implicitly recognizing the powers of state courts, the Court has written that it has the final say in compact-construction cases even when the matter concerns a question on which a state court

has already spoken. *Petty v. Tennessee–Missouri Bridge Comm'n,* 359 *U.S.* 275, 278–79 n. 4, 79 *S.Ct.* 785, 788 n. 4, 3 *L.Ed.*2d 804, 808 n. 4 (1959). On occasion, the Court has even remanded a compact-construction case to a state court for reconsideration. *State ex. rel. Dyer et. al. v. Sims,* 341 *U.S.* 22, 32, 71 *S.Ct.* 557, 562–63, 95 *L.Ed.* 713 (1951) (holding West Virginia's obligation under multi-state anti-pollution compact did not conflict with state constitution, and remanding case to state court).

In *Hess, supra,* moreover, the United States Supreme Court recognized that bi-state agencies are creatures of both the creator states and the federal government. 513 *U.S.* at ——, 115 *S.Ct.* at 400, 130 L.Ed.2d at 255. The Court held that a federal court suit is "not an affront to the dignity of a Compact Clause entity." *Id.* at ——, 115 *S.Ct.* at 401, 130 L.Ed.2d at 256. It follows that a state-court action likewise does not affront a bi-state agency.

This case presents a controversy between the DRBA and its employees, not one between two states. The case, therefore, does not invite the United States Supreme Court to exercise its original and exclusive jurisdiction. No express statutory provision prohibits the courts of Delaware or New Jersey from exercising jurisdiction over the DRBA. Unless a case involves a dispute between two states or an express statutory prohibition against the exercise of jurisdiction by the courts of either state, those courts may construe compacts concerning bi-state agencies.

## III.

When a state signs a compact, a court of that state may not construe the compact absent the compact's recognition of that state's jurisdiction. *Ampro Fisheries, Inc. v. Yaskin,* 127 *N.J.* 602, 610, 606 *A.*2d 1099 (1992), *cert. denied,* 506 *U.S.* 954, 113 *S.Ct.* 409, 121 *L.Ed.*2d 333 (1992). Whether a creator state unilaterally may exercise jurisdiction over a bi-state agency depends, then, on the terms of the compact. *Oklahoma v. New Mexico,* 501 *U.S.* 221, 235 n. 5, 111 *S.Ct.* 2281, 2289 n. 5, 115 *L.Ed.*2d 207, 225 n. 5

(1991); *Texas, supra,* 482 *U.S.* at 128, 107 *S.Ct.* at 2283, 96 *L.Ed.*2d at 114 (1987).

Here, the Compact provides, in pertinent part:

Judicial proceedings to review any ... action of the authority ..., may be brought in such court of each state, and pursuant to such law or rules thereof, as a similar proceeding with respect to any agency of such state might be brought.

[*N.J.S.A.* 32:11E–1 (art. XV).]

Thus, the Compact's plain language makes clear that the courts of New Jersey and Delaware have concurrent jurisdiction to review any action taken by the DRBA.

Over the last thirty years, the New Jersey courts have resolved many disputes, including labor disputes involving the DRBA. *See International Org., supra,* 45 *N.J.* 138, 211 *A.*2d 789 (affirming lower court's order enjoining DRBA employees and their union representatives from striking or otherwise picketing); *Delaware River & Bay Authority v. New Jersey Pub. Employment Relations Comm'n* ("PERC"), 112 *N.J.Super.* 160, 270 *A.*2d 704 (App. Div.1970) (denying Public Employment Relations Commission's authority to order DRBA to collectively negotiate with union absent compact provision conferring such jurisdiction; pending case in Delaware court voluntarily stayed pending outcome of New Jersey appeal); *aff'd,* 58 *N.J.* 388, 277 *A.*2d 880 (1971); *Gauntt Constr. Co./Lott Electric Co. v. Delaware River & Bay Auth.,* 241 *N.J.Super.* 310, 314–15, 575 *A.*2d 13 (App.Div.1990) (acknowledging that Article XV of Compact provides courts of Delaware and New Jersey with concurrent jurisdiction to hear claims involving DRBA). We see no reason to reach a different result in the present case. Hence, we conclude that Article XV vests the courts of New Jersey and Delaware with concurrent jurisdiction over the DRBA's labor disputes.

## IV.

The next question is whether the courts of New Jersey may grant the relief that Local 68 seeks, including issuance of an order requiring, among other things, that the DRBA recognize

Local 68 as the collective-negotiation representative for employees that the Association previously had represented. A single state may not unilaterally impose additional duties on a bi-state agency. *Eastern, supra,* 111 *N.J.* at 398, 545 *A.*2d 127; *Bell, supra,* 83 *N.J.* at 424, 416 *A.*2d 829; *PERC, supra,* 112 *N.J.Super.* at 165–66, 270 *A.*2d 704. For example, DRBA employees do not have the right to strike, absent express approval by the New Jersey and Delaware Legislatures. *International Org., supra,* 45 *N.J.* at 148, 211 *A.*2d 789. A legislative grant to public employees of full collective-negotiation rights, including the right to strike, "must be deliberately expressed and is not to be implied." *Id.* at 148, 211 *A.*2d 789.

Consistent with that premise, the Public Employment Relations Commission does not have jurisdiction to certify a union as the exclusive negotiating representative for DRBA employees. *PERC, supra,* 112 *N.J.Super.* at 166, 270 *A.*2d 704. Such jurisdiction "must be expressly given to [the Public Employment Relations Commission] by the Legislatures of New Jersey and Delaware, and not inferred by the courts." *Id.* at 165, 270 *A.*2d 704.

Consequently, we have declined to subject the Delaware River and Port Authority ("DRPA") to the requirements of New Jersey's Tort Claims Act ("Act"), *N.J.S.A.* 59:1–1 to 12–3. *Bell, supra,* 83 *N.J.* at 425, 416 *A.*2d 829. A contrary result would have granted the New Jersey Legislature power it did not possess, specifically, "the power to modify by unilateral action the waiver of sovereign immunity set forth in the bi-state compact." *Id.* at 424, 416 *A.*2d 829.

More recently, we have construed the DRPA compact to mean that substantially similar statutes adopted by Delaware and New Jersey could constitute complementary legislation. *Eastern, supra,* 111 *N.J.* at 400, 545 *A.*2d 127. For example, in *Eastern,* the issue was whether New Jersey's Law Against Discrimination ("LAD"), *N.J.S.A.* 10:5.1 to –42, as well as its construction laws concerning handicapped access, *N.J.S.A.* 52:32–5, applied to the DRPA. *Eastern, supra,* 111 *N.J.* at 395–96, 545 *A.*2d 127. We concluded that the New Jersey laws did not apply because "nei-

ther creator state [may] unilaterally impose additional duties, powers, or responsibilities upon the Authority." *Id.* at 398, 545 *A.*2d 127. To yield a more "just resolution" of the dispute, however, we remanded the matter to the Law Division to consider whether New Jersey and Delaware had jurisdiction based on complementary legislation within both states and implied consent. *Id.* at 400–01, 545 *A.*2d 127.

 A bi-state agency, although subject to unilateral jurisdiction of a single creator state only when the compact recognizes the state's jurisdiction, "may be subject to complementary or parallel state legislation that does not intrude on the mission of the agency." *Ampro, supra,* 127 *N.J.* at 610, 606 *A.*2d 1099. Although a single state may not unilaterally impose its will on a bi-state agency, the creator states together may subject the agency to complementary or parallel state legislation. *Eastern, supra,* 111 *N.J.* at 400–01, 545 *A.*2d 127. Separate legislative acts are complementary or parallel if they are substantially similar in nature. *Id.* at 401, 545 *A.*2d 127. Legislation is substantially similar if the creator states evidence some showing of agreement in the laws involving and regulating a bi-state agency. *Id.* at 402, 545 *A.*2d 127. If the creator states do not enact complementary or parallel legislation, a court must make additional findings before concluding that the bi-state agency impliedly consented to regulation by one creator state. *Ibid.* Thus, a bi-state agency consents to a single creator state's exercise of jurisdiction when the agency either voluntarily cooperates with the creator state in the exercise of jurisdiction or agrees to meet the requirements of the law of that state. *Ibid.*

In *Bunk v. Port Auth. of New York & New Jersey,* 144 *N.J.* 176, 180, 676 *A.*2d 118 (1996), the issue was whether a Port Authority of New York and New Jersey ("PANN") worker was entitled to receive workers' compensation benefits under the same limitations as apply to other public employees in New Jersey. Resolving that issue required the determination whether the provisions of New York and New Jersey for awarding workers' compensation bene-

fits were parallel and complementary. *Id.* at 185, 676 *A.*2d 118. Rather than "decide the exact contours of New York law," we observed that there was "evidence in the record, . . . that the provisions [were] somewhat similar." *Ibid.* Thus, we held that New Jersey could impose its workers' compensation laws on PANN to limit workers' compensation benefits of a public employee receiving a disability pension under New York law for the same injury. *Id.* at 180, 676 *A.*2d 118.

The Delaware courts follow a similar practice. In *Delaware River and Bay Auth. v. Carello*, 43 *Del.Ch.* 213, 222 *A.*2d 794 (1966), the Delaware Chancery Court interpreted Article VII(e) of the Compact. *Carello* arose in 1966, two years before the New Jersey Legislature passed public employment legislation. Consequently, the Delaware court held that Delaware could not "unilaterally legislate so as to place burdens on the compact." *Id.* 222 *A.*2d at 798–99. The court continued, however, that the Delaware statute would "remain ineffective until concurrent legislative action of a similar nature is taken by the state of New Jersey." *Id.* at 799. The amendment of *N.J.S.A.* 34:13A–1 to –29, constitutes concurrent legislative action. Finally, Article VIII of the Compact recognizes that the DRBA may be subject to obligations other than those that the Compact specifies. Article VIII provides that the DRBA shall not undertake additional duties and obligations "under the law of either State or Congress without authorization by the law of both States." Implicit in that provision is the premise that the two states may subject the DRBA to complementary or parallel legislation.

From the foregoing, we conclude that a bi-state agency, such as the DRBA, is subject to the law of New Jersey when the agency's compact expressly provides for unilateral action, both states have adopted complementary or parallel legislation, or the agency has impliedly consented to the exercise of single-state jurisdiction.

## V.

The final issue is whether the laws of New Jersey and Delaware are complementary and parallel with regard to collective

negotiations for public employees. Both states have enacted laws to prevent labor disputes between public employees, thereby assuring the orderly and uninterrupted operations of public employers. *N.J.S.A.* 34:13A–2; *Del.Code Ann.* tit. 19, § 1302. Both states grant public employees the right to join labor unions and to negotiate collectively through a representative of their own choosing. *N.J.S.A.* 34:13A–5.3; *Del.Code Ann.* tit. 19, § 1303. Finally, both states prohibit public employers from interfering with employees in the exercise of their rights and from refusing to negotiate in good faith with the employees' majority representative. *N.J.S.A.* 34:13A–5.4; *Del.Code Ann.* tit 19, § 1307. The labor laws of New Jersey and Delaware, although not identical, are complementary and parallel. As a matter of public policy, the legislatures of both states have concluded that public employees should have the right of collective negotiation and that employers should not interfere with that right. In effect, the legislatures have modified the Compact. That modification should not interfere with the DRBA's mission of advancing the economic development of the two states and improving the flow of traffic between them.

The dissent would deny DRBA employees the right of collective negotiation that the New Jersey and Delaware Legislatures have conferred on all public employees. In denying that right, the dissent misperceives judicial recognition of the legislative enactments in both New Jersey and Delaware as an attempt by the judiciary to amend the compact contrary to the will of the legislature. (*Post* at 448, 688 A.2d at 576). Contrary to the dissent, we merely recognize that the New Jersey and Delaware legislatures have adopted a substantially similar policy concerning collective negotiations by public employees. Anomalous indeed would be the failure to apply so important a policy to an entity created by both states for their mutual benefit. Unlike the dissent, moreover, we do not believe that recognizing the right of DRBA employees to negotiate collectively will " 'lead to discord and a destruction of the purposes for which such bi-state agencies are

formed.' " (*Post* at 454, 688 A.2d at 579) (quoting *PERC, supra,* 112 *N.J.Super.* at 166, 270 *A.*2d 704).

Nor do we share the dissent's lack of confidence in the ability of the Chancery Division to interpret labor law. (*Post* at 454–55, 688 A.2d at 579–80). Historically, courts have exercised equitable power to resolve labor disputes. *See e.g., Local No. 11 of Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers v. McKee,* 114 *N.J.Eq.* 555, 169 *A.* 351 (Ch.Ct.1933) (appointing receiver to manage union's business until members could elect new officers); *Fryns v. Fair Lawn Fur Dressing Co.,* 114 *N.J.Eq.* 462, 168 *A.* 862 (Ch.Ct.1933) (holding Chancery Court had jurisdiction and that employer could not force employees to join a particular union). Even today, courts interpret labor law. *See* Douglas L. Leslie, ed., *The Railway Labor Act* 7 (BNA Books 1995) (describing courts as "gatekeepers" that define a labor dispute to determine whether to exercise jurisdiction, compel arbitration, or direct the union to the National Mediation Board). At some time, the New Jersey and Delaware Legislatures may adopt legislation designating an agency to resolve "the myriad of issues that will arise during the course of collective negotiations." *Ibid.* Until such time as the legislatures make such a designation, however, the absence of such legislation does not deprive the Chancery Division of jurisdiction.

The judgment of the Appellate Division is affirmed, and the matter is remanded to the Chancery Division.

GARIBALDI, J., dissenting.

The Court has done what the Legislatures of New Jersey and Delaware have not—amend the congressionally-approved Interstate Compact (the Compact) between Delaware and New Jersey to require the Delaware River and Bay Authority (the DRBA) to negotiate collectively with its employees. I believe that the Court does not have the power to amend the Compact unilaterally or to impose additional duties and obligations, arising under New Jersey law, on the DRBA without Delaware's consent.

The majority finds that New Jersey has the power to amend Articles VII(e) and VIII of the Compact because the labor laws of

New Jersey and Delaware, although not identical, are complementary or parallel with regard to collective negotiations for public employees. Although in some situations an agency may be subject to complementary or parallel legislation when the issue is limited to interpreting a state law or a state regulation, such legislation cannot and should not be used to repeal the Compact. Such a result comes from an unwarranted expansion of the *dicta* in *Eastern Paralyzed Veterans Association, Inc. v. City of Camden*, 111 *N.J.* 389, 545 *A.*2d 127 (1988), and will lead to confusion, uncertainty, and conflicts when the Superior Court, Chancery Division of New Jersey, attempts to decide how the differing labor laws of New Jersey and Delaware, as expressed in their parallel labor legislation, are to be effectuated.

I

The Court's ruling directly contravenes Article VII(e) of the Compact, giving the DRBA the power to

[a]ppoint, or employ, such other officers, agents, attorneys, engineers and employees as it may require for the performance of its duties and to fix and determine their qualifications, duties, compensation, pensions, terms of office *and all other conditions and terms of employment and retention.*

[*N.J.S.A.* 32:11E–1, art. VII(e) (emphasis added).]

That provision is intended to keep matters concerning labor relations and collective negotiations in the hands of the DRBA.

The Court's opinion also directly contravenes Article VIII of the Compact that establishes additional powers that may be granted to the DRBA but limits the duties that may be imposed on it. That Article provides:

For the purpose of effectuating the authorized purposes of the authority, additional powers may be granted to the authority by legislation of either State without concurrence of the other, and may be exercised within such State; or may be granted to the authority by Congress and exercised by it; but *no additional duties or obligations shall be undertaken by the authority under the law of either State or of Congress without authorization by the law of both States.*

[*N.J.S.A.* 32:11E–1, art. VIII (emphasis added).]

Requiring the DRBA to negotiate collectively with its employees most certainly will impose "additional duties or obligations" on it.

## II

Unless both states agree, it is well-established that a single-creator state may not unilaterally impose additional duties upon a bi-state agency when to do so would contravene the terms of the Compact. *Eastern, supra,* 111 *N.J.* at 398, 545 *A.*2d 127; *Bell v. Bell,* 83 *N.J.* 417, 424, 416 *A.*2d 829 (1980); *Delaware River & Bay Auth. v. New Jersey PERC,* 112 *N.J.Super.* 160, 165–66, 270 *A.*2d 704 (App.Div.1970) (*PERC*), *aff'd o.b.,* 58 *N.J.* 388, 277 *A.*2d 880 (1971). That principle was addressed by the Appellate Division in *PERC, supra,* a case also concerning labor relations of the DRBA. 112 *N.J.Super.* at 165, 270 *A.*2d 704. There, the court was asked to determine whether New Jersey's Public Employment Relations Commission (PERC) had jurisdiction to certify a union as the exclusive bargaining representative for certain DRBA employees. *Id.* at 163, 270 *A.*2d 704. Holding that PERC did not have jurisdiction, the panel stated that such jurisdiction *"must be expressly given* to [PERC] by the Legislatures of New Jersey and Delaware, and *not inferred by the courts." Ibid.* (emphasis added). To hold otherwise, the panel explained, would authorize one creator-state to impose its will and policies over the other state contrary to the terms of the Compact. *Ibid.* The court noted that under Article VIII of the Compact, the DRBA's powers were to be jointly controlled by both creator-states. *Id.* at 164, 270 *A.*2d 704.

The court further explained that because a bi-state agency is a single agency of the governments of both creator-states, neither creator-state may enact laws involving and regulating the agency unless both states agree. *Id.* at 165–66, 270 *A.*2d 704; *see also Bell, supra,* 83 *N.J.* at 424, 416 *A.*2d 829 ("[T]he New Jersey Legislature does not have the power to modify by unilateral action the waiver of sovereign immunity set forth in the bi-state compact; yet that would be the result were the Tort Claims Act held to apply to the DRPA."); *Gauntt Constr. Co./Lott Electric Co. v. Delaware River & Bay Auth.,* 241 *N.J.Super.* 310, 575 *A.*2d 13 (App.Div.1990) (rejecting contention that public policy of both compacting states imposed duties on bi-state agency).

A careful reading of *Eastern, supra,* 111 *N.J.* at 389, 545 *A.2d* 127, discloses that the majority has expanded the scope of that decision. In *Eastern* we only decided whether the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5–1 to –42, the New Jersey Uniform Construction Code Act, *N.J.S.A.* 52:27D–119 to – 141, and the New Jersey Handicapped Access Law, *N.J.S.A.* 52:32–42 to –16 applied to the Delaware River Port Authority (DRPA). We concluded that New Jersey laws could not be applied because the DRPA was a public corporate-instrumentality of both New Jersey and Pennsylvania. Hence, "neither creator state [may] unilaterally impose additional duties, powers, or responsibilities upon the Authority." *Id.* at 398, 545 *A.2d* 127. Additionally, the Court, citing *Bell,* concluded that New Jersey may not unilaterally exercise jurisdiction over the DRPA because to do so would violate the Compact, which made no provision for such jurisdiction. *Ibid.*

In *Eastern,* we also found that the DRPA's Compact did "not contemplate single-state jurisdiction in general." *Id.* at 400, 545 *A.2d* 127. The Court observed that "when Pennsylvania and New Jersey intended that local law would govern an area relevant to their compact, such as acquisition by eminent domain, *N.J.S.A.* 32:3–13.51, or consent for highway connection to the bi-state toll bridge, *N.J.S.A.* 32:3–13.55, they so specified." *Id.* at 401–02, 545 *A.2d* 127.

In addressing the Eastern Paralyzed Veterans Association's contention that the public policy of New Jersey mandated that the DRPA install elevators at its transit facility in Camden, the Court stated:

> This State lacks the sovereign authority to direct the DRPA to cede jurisdiction to New Jersey.... [S]o too a single state cannot dictate the policy of a bi-state agency.
>
> [*Id.* at 407, 545 *A.2d* 127 (citations omitted).]

Accordingly, the Court held that the State of New Jersey could not exercise unilateral jurisdiction over the DRPA, stating that compacting states may only be subjected to single-state jurisdiction when the compact itself recognizes such jurisdiction. *Id.* at

399, 545 *A*.2d 127. The DRPA's Compact, the Court made clear, did not contemplate that form of unilateral state jurisdiction. *Id.* at 400, 545 *A*.2d 127.

Remanding the matter to the trial court, the Court, in *dicta,* suggested, however, that "the theories of complementary regulations and implied consent, given a fuller exposition, may yield a just resolution of the dispute." *Id.* at 400–01, 545 *A*.2d 127. To succeed under that fact-sensitive,. complementary-legislative theory, the Court stated, there must be *"some showing of agreement"* by the creator states to the enforcement of laws involving and regulating a bi-state agency. *Id.* at 402, 545 *A*.2d 127 (emphasis added). The best illustration of parallelism, the Court pointed out, is that DRPA employees are required to observe stop lights in New Jersey just as they are required to do so in Pennsylvania, even though neither state adopted such regulations within the framework of the compact creating the bi-state agency. *Id.* at 400, 545 *A*.2d 127 (citing *Nardi v. Delaware River Port Auth.,* 88 *Pa.Cmwlth.* 558, 490 *A*.2d 949, 952 n. 10 (1985)). That example indicates the type of uncomplicated situation that complementary laws were capable of addressing.

In *Ampro Fisheries, Inc. v. Yaskin,* 127 *N.J.* 602, 606 *A*.2d 1099 (1992), *cert. denied,* 506 *U.S.* 954, 113 *S.Ct.* 409, 121 *L. Ed.*2d 333 (1992), and *Bunk v. Port Authority of New York & New Jersey,* 144 *N.J.* 176, 676 *A*.2d 118 (1996), the facts were much different from those in this case. In those cases, the Court did not amend the language of the Compact. In this case, however, Article VII(e), giving the Authority exclusive control over conditions and terms of employment, and Article VIII, providing that no state shall impose additional duties on another state without its consent, are, in effect, being directly overruled.

The Compact does not expressly give the compacting states the power to impose their labor laws on the DRBA, and the DRBA did not consent to the exercise of single-state jurisdiction in the area of collective negotiations with its employees. In fact, the evidence

is to the contrary. That policy is confirmed by Article XIV of the DRBA's Personnel Manual (the Manual), which provides:

> Upon accepting a position ... with the Authority, an individual becomes a public or governmental employee.... In this connection, Authority employees have no right to incite, organize, conduct or participate in any strike, slowdown, or impediment to work against the Authority ... and *neither does the Authority have the obligation to engage in collective bargaining with its employees or their chosen representative as may be unusual [sic] and legally done in private individual employment.*

[Emphasis added.]

In view of the language of Article VII(e) and VIII of the Compact, something more than mere complementary or parallel statutes is needed to repeal specific language in the Compact, or stated differently, to act as an implied repeal of the Compact's language. Similar public policy in two states is not sufficient to render one state's legislation applicable to a bi-state agency's employment practice. *Malverty v. Waterfront Comm'n of N.Y. Harbor,* 71 *N.Y.*2d 977, 529 *N.Y.S.*2d 67, 524 *N.E.*2d 421 (1988).

Permitting similar legislative acts of compacting states to amend a compact completely disregards the long-standing precedents requiring legislatures to agree expressly before a state can impose duties and obligations on a bi-state agency. The majority's reasoning ignores the fact that when the Legislatures of New Jersey and Delaware sought to impose unilaterally-enacted state legislation on their bi-state agency, they expressly provided for it in the Compact. *Eastern, supra,* 111 *N.J.* at 401–02, 545 *A.*2d 127; *see also N.J.S.A.* 32:11E–1, Article XXII (imposing obligation on DRBA to comply with unilaterally-enacted environmental protection laws when planning, developing, constructing, or operating certain projects). The lack of a similar provision imposing unilaterally-enacted employment or labor laws on the DRBA must be viewed as an intent that such laws not apply.

III

Moreover, as explained in *PERC, supra,* 112 *N.J.Super.* at 166, 270 *A.*2d 704, "[t]o sanction such practice would lead to discord

and a destruction of the purposes for which such bi-state agencies are formed." The panel made it clear that to impose New Jersey's labor policies on Delaware and its citizens, who are employed by the DRBA, would require that

> [t]he States of New Jersey and Delaware ... *amend the compact and agree upon the issue* of whether [the DRBA's] employees may organize and engage in collective negotiations, what procedure should be utilized to implement this result, and where and how it should be accomplished. Unless, such is done, Delaware and New Jersey could each claim jurisdiction since both states have legislation permitting public employees to organize and negotiate. The confusion and conflicts which would follow if one state assumed jurisdiction, makes it clear that such was never intended by the compact.
>
> [*Id.* at 166, 270 *A*.2d 704 (emphasis added).]

The same problem will result from the majority's remand to the Chancery Division to effectuate the implementation of the two laws. Although the labor laws of New Jersey and Delaware are based on similar public policies, they differ in the following manner: (1) each States' statute describes a different procedure for determining the employee-bargaining unit (*N.J.S.A.* 34:13A–5.3; *Del.Code Ann.* tit. 19, § 1310); (2) the provisions for determining unfair labor practices and enforcing the statutes are different (*N.J.S.A.* 34:13A–5.4; *Del.Code Ann.* tit. 19, § 1308); (3) the New Jersey statute provides for arbitration of disputes whereas the Delaware statute does not (*N.J.S.A.* 34:13A–7); and (4) neither statute indicates in its declaration or purpose that it intended for the statute to apply to the DRBA.

Inevitably, the Court's decision will create uncertainty as to which state's law and administrative procedures apply to a given situation. Rather than acting as a court, the Chancery Division will be acting as an administrative agency interpreting labor law; a role for which the Chancery Court was not intended and for which it is not well suited.

## IV

In conclusion, I find that complementary or parallel state laws cannot repeal the language of the Compact. The Legislatures of both States could readily enact concurrent legislation requiring

the DRBA to enter into collective negotiations with its employees thereby designating an entity more appropriate than the Chancery Division to decide the myriad of issues that will arise during the course of collective negotiations. They did not, however, choose to follow such a course. As such, the courts of New Jersey lack the authority to unilaterally grant such power.

I would reverse the judgment of the Appellate Division.

For affirmance and remandment—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, STEIN and COLEMAN—6.

For reversal—Justice GARIBALDI—1.