709 A.2d 1336

RALPH S. BALLINGER, PLAINTIFF–APPELLANT, v. DELAWARE RIVER PORT AUTHORITY, PAUL DRAYTON, VINCENT BORELLI, RICHARD SULLIVAN, ALVIN WOODHOUSE, DAVID MCCLINTOCK, AND ALAN DANIELS, DEFENDANTS–RESPONDENTS.

GREGORY RUGGIERO, PLAINTIFF–APPELLANT, v. DELAWARE RIVER PORT AUTHORITY AND PAUL DRAYTON, INDIVIDUALLY AND AS AGENT FOR THE DELAWARE RIVER PORT AUTHORITY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 3, 1998 and by Telephone on
March 9, 1998—Decided May 8, 1998.

---

Before Judges LONG, KLEINER and KIMMELMAN.

*Daniel M. Replogle, III,* argued the cause for appellant Ballinger (*DuBois, Sheehan, Hamilton & Levin,* attorneys; *Mr. Replogle,* on the brief).

*Mario A. Iavicoli,* argued the cause for appellant Ruggiero.

*Scott F. Cooper,* argued the cause for respondents in both appeals (*Blank Rome Comisky & McCauley,* attorneys; *Peter A. Gold, Mr. Cooper* and *Jennifer J. Platzkere* of counsel; *Mr. Gold,* on the brief).

The opinion of the court was delivered by

LONG, P.J.A.D.

The primary issue addressed in these appeals, which we have consolidated for the purpose of this opinion, is whether the Delaware River Port Authority (DRPA), a bi-state agency created by compact between New Jersey and Pennsylvania is subject to the provisions of the New Jersey Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19-1 to -8. Our review of this record, in light of relevant legal principles, has led us to conclude that the answer is "no." We have also concluded that the waiver provisions of CEPA cannot be invoked where, as here, plaintiffs lacked the right to make a CEPA claim. Therefore, the dismissal of Gregory Ruggiero's common law claims against DRPA was erroneous as was the refusal to allow Ralph Ballinger to amend his complaint to assert such claims.

### A–5584–95T2

Ralph Ballinger began his employment as a police officer with DRPA in April of 1984 and worked there until his termination on February 8, 1995. On December 29, 1995, he filed a single count complaint alleging that he had been discharged from his employment by DRPA in violation of CEPA. More particularly, he claimed that he had been terminated in retaliation for disclosing information to the New Jersey State Police concerning a criminal activity (theft) by DRPA employees. He later filed an amended complaint alleging that various individual employees of DRPA also violated CEPA. In lieu of an answer, DRPA and the individual employees filed a notice of motion to dismiss the complaint for failure to state a claim for relief, pursuant to *R.* 4:6–2(e). The trial judge granted the motion and dismissed the amended complaint because he concluded that DRPA is not subject to CEPA.

In the interim, Ballinger filed a notice of cross-motion to file a second amended complaint to include a common law retaliatory discharge claim against the individual employees.[1] On May 28, 1996, the judge denied Ballinger's cross-motion and entered a final judgment in favor of all defendants.

### A–5622–95T2

Gregory Ruggiero began his employment at DRPA as a toll collector on the Benjamin Franklin Bridge around 1987 and worked there until his termination on December 30, 1994. During this time, Ruggiero was a member and officer of the International Union of Operating Engineers, Local 716 (Union). On December 13, 1994, along with other toll takers, he shut down his toll booth in order to address his concerns about asbestos in the tunnel which the toll takers had to use to gain access to the toll booths. Approximately 9 minutes after the shut down, the toll takers returned to their respective booths. All of the other toll takers

---

[1] Ballinger contends the proposed amendment was against both DRPA and individual employees. However, at argument on this motion, he appears to have limited his application to individual employees.

involved in this incident were suspended for no more than three days without pay. Ruggiero, however, was terminated from employment.

Ruggiero filed a five count complaint on December 26, 1995 against DRPA asserting he was wrongfully discharged in violation of CEPA; that various DRPA employees violated CEPA by retaliating against him for the work stoppage to protest health and safety violations; that he was wrongfully discharged for his union activities; that he was wrongfully discharged in violation of public policy; and that defendants breached the collective bargaining agreement. Defendants filed a notice of motion to dismiss the complaint for failure to state a claim for relief, pursuant to *R.* 4:6–2(e). At the same time, an arbitration proceeding was instituted against DRPA pursuant to the labor agreement between Ruggiero's Union representative and DRPA. The issue presented at the arbitration proceeding, which was based on the same facts as this appeal, was whether Ruggiero was discharged in violation of the collective bargaining agreement. The arbitrator found Ruggiero was not discharged for good cause; that he should be awarded back pay and returned to his former position less a three day suspension without pay.

On April 26, 1996, the trial judge (a different judge from the one in Ballinger's case) heard oral argument on defendants' motion to dismiss. At the conclusion of argument, he granted defendants' motion in its entirety and dismissed Ruggiero's complaint with prejudice. In so doing, he ruled that Ruggiero's claims regarding the collective bargaining agreement between DRPA and the Union were governed by the agreement and through the grievance procedure initiated by the Union. The judge also concluded that DRPA was not subject to a CEPA claim and dismissed the remaining elements of the complaint because they arose out of the same facts as the CEPA claim. Ballinger and Ruggiero appeal.

*I*

In reviewing a motion to dismiss made pursuant to *R.* 4:6–2(e), for failure to state a claim for relief, it is essential to canvass the

complaint to determine whether "a cause of action can be found within its four corners." *Van Natta Mechanical Corp. v. Di Staulo*, 277 *N.J.Super.* 175, 180, 649 *A.2d* 399 (App.Div.1994). In so doing, we must accept the facts asserted in the complaint as true. *Craig v. Suburban Cablevision, Inc.*, 140 *N.J.* 623, 625–26, 660 *A.2d* 505 (1995). A reviewing court must "'search[ ] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned from an obscure statement of claim, opportunity being given to amend if necessary.'" *Printing Mart–Morristown v. Sharp Elecs. Corp.*, 116 *N.J.* 739, 746, 563 *A.2d* 31 (1989) (quoting *Di Cristofaro v. Laurel Grove Mem'l Park*, 43 *N.J.Super.* 244, 252, 128 *A.2d* 281 (App.Div. 1957)). Accordingly, all reasonable inferences are given to plaintiff. *Ibid.; Van Natta Mech. Corp., supra*, 277 *N.J.Super.* at 181, 649 *A.2d* 399. Courts should grant these motions with caution and in "the rarest instances." *Printing Mart–Morristown, supra*, 116 *N.J.* at 772, 563 *A.2d* 31; *Van Natta Mech. Corp., supra*, 277 *N.J.Super.* at 181, 649 *A.2d* 399.

A review of Ballinger's complaint reveals that both counts are based on CEPA as are the first two counts of Ruggiero's complaint. Defendants moved to dismiss these counts because CEPA is a unilaterally enacted state law which does not apply to DRPA, as a bi-state agency, nor to its agents or employees.

DRPA was created by an interstate compact between the Commonwealth of Pennsylvania and the State of New Jersey for the purpose of developing and maintaining bridges and port facilities between the two states. *See N.J.S.A.* 32:3–1 to—3–18; 36 Pa. Stat. §§ 3503–3505 (1998). Among the powers granted to DRPA is the power "[t]o sue and be sued." *N.J.S.A.* 32:3–5(b). This grant is considered a waiver of sovereign immunity. *See Bell v. Bell*, 83 *N.J.* 417, 423, 416 *A.2d* 829 (1980). This agency, however, derives its powers, including its waiver of sovereign immunity, from joint legislation. *Id.* at 424, 416 *A.2d* 829. Accordingly, one state cannot modify this waiver of sovereign immunity by unilateral action. *Ibid.*

A series of cases have addressed the issue of the viability of suits against compact agencies. The New Jersey Supreme Court first addressed the applicability of a single-state's law to DRPA in *Bell v. Bell, supra.* The question presented was whether a person, injured by an unmarked girder on the railroad bridge, could bring a claim against DRPA under the New Jersey Tort Claims Act. *Id.* at 420–21, 416 *A.2d* 829. The court noted that DRPA theoretically falls under the definition of a "public entity" in the Tort Claims Act. *Id.* at 423, 416 *A.2d* 829. Nevertheless, the court determined the New Jersey Legislature "does not have the power to modify by unilateral action the waiver of sovereign immunity set forth in the bi-state compact; yet that would be the result were the Tort Claims Act held to apply to DRPA." *Id.* at 424, 416 *A.2d* 829. In reaching its decision, *Bell* adopted our rationale in *Delaware River & Bay Auth. v. New Jersey Pub. Employment Relations Comm'n.,* 112 *N.J.Super.* 160, 270 *A.2d* 704 (App.Div.1970), *aff'd o.b.,* 58 *N.J.* 388, 277 *A.2d* 880 (1971). There, we stated that to allow one state to regulate a bi-state agency would destroy the purpose of the agency. *Id.* at 166–66, 270 *A.2d* 704. (finding New Jersey could not unilaterally vest the Public Employment Relations Commission with jurisdiction over the Delaware River & Bay Authority in violation of its compact which made no provision for such jurisdiction).

In *Eastern Paralyzed Veterans Ass'n v. City of Camden,* 111 *N.J.* 389, 398, 545 *A.2d* 127 (1988), the Supreme Court applied the same rationale in refusing to hold DRPA subject to the New Jersey Uniform Construction Code and Law Against Discrimination. The court declared that a single-state's law is applicable to DRPA when the compact itself explicitly recognizes that it is subject to single-state jurisdiction. *Id.* at 399, 545 *A.2d* 127. However, the court noted that the bi-state agency may be "subject to complementary or parallel state legislation." *Id.* at 400, 545 *A.2d* 127. The court defined complementary and parallel legislative acts as those which are *substantially* similar in nature. *Id.* at 401, 545 *A.2d* 127. By way of example, the court said that employees of DRPA are required to observe traffic signals in New

Jersey because both states have similar legislation. *Id.* at 400, 545 *A.*2d 127. However, "[s]ome showing of agreement by both states" that the laws are intended to apply to the agency is required. *Id.* at 402, 545 *A.*2d 127. If the states do not have complementary legislation then the court must make additional findings to determine whether the bi-state agency impliedly consented to unilateral state regulation. *Ibid.* To hold otherwise, the court explained, would allow one state to impose "additional duties, powers or responsibilities" upon DRPA. *Id.* at 398, 545 *A.*2d 127.

The most recent Supreme Court decision on this issue is *Int'l Union of Operating Eng'r v. Delaware River & Bay Auth.*, 147 *N.J.* 433, 688 *A.*2d 569, *cert. denied*, —— *U.S.* ——, 118 *S.Ct.* 165, 139 *L.Ed.*2d 108 (1997) which involved a suit against the Delaware River & Bay Authority (DRBA), a bi-state agency created by compact between the states of New Jersey and Delaware. The court reaffirmed that a bistate agency is subject to New Jersey law when 1) the compact explicitly provides for unilateral state action; 2) both states have complementary or parallel legislation; or 3) the bi-state agency impliedly consented to a single-state's jurisdiction. *Id.* at 446, 688 *A.*2d 569. Applying these principles, the court determined that DRBA was subject to New Jersey labor laws regarding collective bargaining for employees because Delaware has complementary, although not identical, legislation. *Id.* at 447, 688 *A.*2d 569.

The court did not delineate the differences, if any, between the two laws. *See id.* at 446–47, 688 *A.*2d 569. However, in arriving at its decision, it noted that the Delaware court had previously determined that its public employment legislation was not applicable to DRBA until New Jersey enacted similar legislation. *Id.* at 446, 688 *A.*2d 569. (citing, *Delaware River & Bay Auth. v. Carello*, 222 *A.*2d 794, 798–99 (Del.Ch.1966)). The New Jersey labor law at issue in *Int'l Union of Operating Eng'r* constituted the subsequently adopted similar legislation. *Id.* at 446, 688 *A.*2d 569. Therefore, implicit in the Supreme Court's decision that New

Jersey and Delaware labor laws are similar, even though not identical, is the finding that both state legislatures agreed, as a matter of public policy, that public employees should have the right of collective negotiation. *Id.* at 447, 688 *A.2d* 569. *See also Bunk v. Port Authority of New York & New Jersey*, 144 *N.J.* 176, 185–86, 676 *A.2d* 118 (determining that New York and New Jersey's provisions providing for workers' compensation benefits and disability benefits are parallel).

These principles have also been applied to bi-state agencies in other state and federal courts. For instance, in *Nardi v. Delaware River Port Auth.*, 88 *Pa.Cmwlth.* 558, 490 *A.2d* 949 (1985), the plaintiff, who was injured during the course of his employment as a DRPA police officer, sought and was denied supplemental benefits under Pennsylvania Enforcement Officers Disability Benefits Law (Pennsylvania Benefits Law). *Id.* 490 *A.2d* at 949–950. The court noted the general rule that additional duties, powers or responsibilities cannot be imposed unilaterally by one state on DRPA. *Id.* at 950. The court then compared section 1(a) of the Pennsylvania Benefits Law, 53 P.S. § 637(a), to the New Jersey counterpart, *N.J.S.A.* 32:3A–1, to determine whether they are substantially similar. *Id.* at 950–51. In concluding that they are not, the court noted that Pennsylvania's law states that an injured DRPA police officer "shall be paid … his full salary … until the disability therefrom has ceased," while New Jersey's law provides that an injured DRPA employee "may" be paid his full salary for up to one year. *Ibid.* Nardi, however, argued he should receive benefits for a period of one year, contending New Jersey concurred *to this extent* with Pennsylvania. *Id.* at 950. The court rejected this contention, finding the two statutes distinct enough to refuse application of both laws as unilateral action. *Id.* at 952.

In *Delaware River Port Authority v. Pennsylvania, State Ethics Comm.*, 137 *Pa.Cmwlth.* 170, 585 *A.2d* 587 (1991) the court determined that Pennsylvania's State Ethics Commission Act (Act) did not apply to DRPA, its officers or employees. The court opined that the compact did not expressly authorize the imposition

of the Act's requirements, nor did Pennsylvania and New Jersey have substantially similar laws. *Id.* 585 *A.*2d at 588. Finding the reasoning in *Nardi* applicable, the court held the imposition of the Act would result in additional duties and would constitute unilateral legislation. *Id.* at 589.

More recently, the court in *King v. Port Auth. of New York & New Jersey,* 909 *F.Supp.* 938 (D.N.J.1995), *aff'd,* 106 *F.*3d 385 (3d Cir.1996) discussed whether the rationale of the foregoing New Jersey cases was applicable to the Port Authority of New York and New Jersey (Port Authority). King filed suit against the Port Authority for discrimination in violation of New Jersey's Law Against Discrimination (LAD). *Id.* at 943. The court held that one state could not unilaterally impose a law against the Port Authority as a bi-state agency and that LAD is not applicable to the Port Authority because New York has not concurrently adopted the same or similar legislation. *Id.* at 944–45.

In sum, DRPA can only be subject to CEPA if 1) its compact expressly authorizes unilateral action, 2) both New Jersey and Pennsylvania have complementary or parallel legislation or 3) DRPA has impliedly consented to the exercise of single-state jurisdiction. *Int'l Union of Operating Eng'r, supra,* 147 *N.J.* at 446, 688 *A.*2d 569.

We turn first to the compact in which there is no express authorization for unilateral action under New Jersey's CEPA law. This does not end the inquiry, however. Next, a comparison of New Jersey's CEPA statute, *N.J.S.A.* 34:19–1 to –8, to Pennsylvania's counterpart, 43 Pa. Stat. § 1421– § 1428 (1988) (Whistleblower Law), must be made to determine whether they are complementary or parallel such that both legislatures intended for the laws to apply to DRPA. *See Eastern Paralyzed Veterans Ass'n, supra,* 111 *N.J.* at 400, 545 *A.*2d 127. Mindful of the principles enunciated in *Eastern,* in order to be complementary or parallel the court must find the legislative acts of both states to be "substantially similar" in nature. *Id.* at 401, 545 *A.*2d 127. Furthermore, the court must find some agreement between the states

that CEPA and the Whistleblower Law are intended to apply to DRPA. *Id.* at 402, 545 *A.*2d 127.

Ruggiero and Ballinger argue the two statutes are substantially similar because both were enacted to prohibit employees from being discharged for whistleblowing; the intent of both laws is to confer a benefit on public employees; and the remedies available are similar. Defendants counter there are substantial differences between the laws and thus they are not complementary or parallel.

Upon comparing the two laws, four basic differences appear. First, there is a difference in scope. CEPA encompasses both private and public employees whereas the Whistleblower Law applies only to public employers. *See N.J.S.A.* 34:19–2(a) and 43 Pa. Stat. § 1422 (1998). Hence, The New Jersey Legislature enacted a law which covers a broader range of employers and employees than the Whistleblower Law. This is an important difference although it does not affect this case.

The second difference is the time period for the filing of a claim. CEPA allows an employee to institute a civil action up to one year from the date of violation while the Whistleblower Law only allows a civil action to be brought within 180 days (or 6 months) from the date of violation. *See N.J.S.A.* 34:19–5 and 43 Pa. Stat. § 1424(a)(1998). Importantly, both Ruggiero's and Ballinger's claims would have been barred by the statute of limitations if brought under Pennsylvania law. Ruggiero was terminated on December 30, 1994 and filed a complaint on December 26, 1995, almost one year after the date of violation. Ballinger was terminated on February 8, 1995 and filed his complaint on December 29, 1995, approximately ten months after the date of violation. This discrepancy clearly demonstrates that the two states have not reached an agreement about the application of the whistleblower laws. It also eliminates the need for us to address the "least common denominator" theory of applicability rejected in *Nardi* because application of the shorter Pennsylvania statute of limitations would result in an automatic dismissal of both complaints.

A third difference between the statutes is that CEPA allows for the recovery of punitive damages while the Whistleblower Law does not. *See N.J.S.A.* 34:19–5(f) and 43 Pa. Stat. § 1426 (1998). *See also Rankin v. City of Philadelphia*, 963 *F.Supp.* 463, 478–79 (E.D.Pa.1997) (holding the Whistleblower Law does not extend punitive damages to plaintiffs, distinguishing the case, *Feldman v. Philadelphia Housing Auth.*, 43 *F.*3d 823 (3d Cir.1994), where the court allowed punitive damages to be awarded for a general verdict, and not for a whistleblower claim). Finally, CEPA provides for a trial by jury while the Whistleblower Law does not. *See N.J.S.A.* 34:19–5 and 43 Pa. Stat. § 1424 (1998).

These differences are not insignificant and they fully support the conclusion that CEPA and the Whistleblower Law are neither complementary nor parallel. A DRPA employee suing under CEPA could wait a year to file his or her claim and would be entitled to a jury trial and punitive damages. The same employee suing under the Pennsylvania law would have to file within 6 months and then would only be entitled to a bench trial for compensatory damages. In other words, the employee's remedy would depend on which state law he or she invoked. This demonstrates that New Jersey and Pennsylvania are not in agreement over the applicability of CEPA or the Whistleblower Law to DRPA. Further, it is not clear that either state's legislature intended to confer this benefit upon DRPA employees.

The last issue is whether DRPA has impliedly consented to the exercise of single-state jurisdiction. Implied consent is found when either DRPA voluntarily cooperates with New Jersey in the exercise of jurisdiction or agrees to meet the requirements of CEPA. *Int'l Union of Operating Eng'r, supra*, 147 *N.J.* at 445, 688 *A.*2d 569. Ruggiero and Ballinger argue that implied consent can be found based upon 1) the "to sue and be sued" provision in DRPA's compact which in their opinion is a waiver of sovereign immunity that generally authorizes suits against it; 2) the provision in its compact which states that DRPA may have duties "imposed upon it from time to time by the action of either State

concurred in by legislation of the other," pursuant to *N.J.S.A.* 32:3–5(q); and 3) that DRPA falls within the definition of an employer in *N.J.S.A.* 34:19–2(a) of CEPA.

These arguments are unavailing. As defendants point out, the compact provision "to sue and be sued" does not provide either state the right to unilaterally impose liability upon DRPA. Rather, as stated in *Bell, supra,* DRPA derives its powers, including its waiver of sovereign immunity, from joint legislation. *Bell, supra,* 83 *N.J.* at 424, 416 *A.*2d 829. Therefore, one state's legislature "does not have the power to modify by unilateral action the waiver of sovereign immunity." *Ibid.*

Plaintiffs' contention that DRPA consented to suit under *N.J.S.A.* 32:3–5(q) is also incorrect. This provision does not state that DRPA agrees to meet the requirements of CEPA. Rather, it recognizes that DRPA will be subject to legislation by either state where *both* states concur that the legislation will apply. There is no evidence showing a concurrence between New Jersey and Pennsylvania that CEPA will apply to DRPA.

Finally, plaintiffs' argument that DRPA is subject to CEPA because it falls within the definition of employer in the statute is unavailing. "Employer" is partially defined as "any authority, commission, or board or any other agency" of the State. *See N.J.S.A.* 34:19–2a. While DRPA may arguably fall within this definition, all that this connotes is that DRPA could be subject to CEPA if the concurrence of Pennsylvania or the consent of DRPA had been established. *See, e.g., Bunk v. Port Authority of New York & New Jersey, supra,* 144 *N.J.* at 183, 676 *A.*2d 118 (noting that New York and New Jersey agreed to waive the Port Authority's sovereign immunity by consenting to worker compensation suits).

Because there is no express authority for unilateral action in the compact, New Jersey and Pennsylvania have not enacted complementary or parallel legislation and DRPA has not impliedly consented to the exercise of single-state jurisdiction, CEPA is not applicable to DRPA.

## II

Plaintiffs also contend that it was error to dismiss the CEPA charge brought against the individual employees of DRPA, arguing they are subject to a CEPA suit independent of their employer. They base this contention on *Printing Mart–Morristown v. Sharp Elecs. Corp., supra,* which holds that individual employees can be liable for torts committed while at work. However, neither plaintiff alleges that the DRPA employees acted outside of the scope of their employment. Because the employees were at all times acting within their official capacity, the same analysis and conclusion as to their employer applies to them. Accordingly, because CEPA is not applicable to DRPA itself, it is also inapplicable to its employees.

## III

Ballinger contends it was error to refuse to allow him to amend his complaint to assert a common law action for retaliatory discharge against the individual employees. Ruggiero likewise claims entitlement to maintain his common law claims for retaliatory discharge in violation of public policy and for union activities. However, the trial judges ruled that these employees waived their right to pursue both statutory and common law retaliatory discharge causes of action upon asserting a CEPA claim. *See Young v. Schering Corp.,* 141 *N.J.* 16, 660 *A.*2d 1153 (1995); *Mehlman v. Mobil Oil Corp.,* 291 *N.J.Super.* 98, 676 *A.*2d 1143 (App.Div.), *aff'd,* 153 *N.J.* 163, 707 *A.*2d 1000 (1998); *Catalane v. Gilian Instrument Corp.,* 271 *N.J.Super.* 476, 638 *A.*2d 1341 (App.Div.), *certif. denied,* 136 *N.J.* 298, 642 *A.*2d 1006 (1994). It is here that we part company from the trial court rulings.

The CEPA waiver provision, *N.J.S.A.* 34:19–8, states:

Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

The purpose of the provision, as interpreted by the Supreme Court in *Young, supra,* is to prevent multiple or duplicative claims on retaliatory discharge. The court held:

> [O]nce a CEPA claim is "instituted," any rights or claims for retaliatory discharge based on ·a contract of employment; collective bargaining agreement; State law, whether its origin is the Legislature, the courts, the common law or rules of court; or regulations or decisions based on statutory authority, are all waived.
>
> [*Young, supra,* 141 *N.J.* at 29, 660 *A.*2d 1153.]

*Young* however left open the question of "whether the statutory waiver is applicable if the CEPA claim is withdrawn or otherwise concluded prior to judgment on the merits." *Id.* at 32, 660 *A.*2d 1153. In *Crusco v. Oakland Care Ctr., Inc.,* 305 *N.J.Super.* 605, 702 *A.*2d 1363 (App.Div.1997) we addressed this issue directly. There we held that a former employee's assertion of a CEPA claim in a complaint did not bar her from bringing a common law wrongful discharge claim in a case in which the CEPA claim was barred by CEPA's statute of limitations. *N.J.S.A.* 34:19-5 and 34:19-8. We said:

> Plaintiff was, from the outset, barred by reason of the passage of time, *i.e.,* the one-year statutory limitation in *N.J.S.A.* 34:19-5, from litigating her rights under CEPA. Because plaintiff lacked the right to make the CEPA claim after the statutory time limit had passed, it was illogical to view her as barred by the effect of asserting it. There is nothing in the whole of CEPA that can be taken to suggest a legislative intendment to extinguish other claims of employment right. Indeed, the introductory language of the waiver provision itself belies any such purpose: "Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract[.]" *N.J.S.A.* 34:19-8. the provision goes on to prescribe an exception to this general design by way of merely requiring a plaintiff, effectively, to make an election of available remedies. *Young v. Schering Corp., supra,* 141 *N.J.* at 27, 660 *A.*2d 1153. It is, in sum, quite obvious that an employee who is barred from making a CEPA claim has no remedy under the Act and cannot, therefore, be seen to have any options from which to elect. *See ibid.* Thus, when this plaintiff erroneously pled an unavailable CEPA claim, no bar could attach in respect of any other available claims of wrongful discharge. The second count, as originally formulated, had no more legal effect than a smudge on the face of the complaint.
>
> [*Crusco, supra,* 305 *N.J.Super.* at 612-13, 702 *A.*2d 1363.]

We are satisfied that this is the analysis which is applicable here. From the outset, Ballinger and Ruggiero were barred from pursuing statutory CEPA claims against DRPA because the com-

pact does not authorize unilateral action; the legislation of New Jersey and Pennsylvania is not complementary or parallel, and DRPA has not impliedly consented to the exercise of single-state jurisdiction. Nothing in CEPA suggests to us that, in such circumstances the Legislature intended to bar plaintiffs from pursuing their common law remedies. Essentially, these plaintiffs, like Crusco, erroneously pled an unavailable CEPA claim, and thus no bar attaches in respect of other available claims of wrongful discharge. That said, the dismissal of Counts 3, 4 and 5 of Ruggiero's complaint was error and must be reversed.

Likewise, *R.* 4:9-1 provides that a party may amend a pleading "by leave of court which shall be freely given in the interests of justice." A motion for leave to amend should be liberally granted. *Fisher v. Yates,* 270 *N.J.Super.* 458, 467, 637 *A.2d* 546 (App.Div. 1994). While this is a discretionary matter for the trial judge (see *ibid.*), the judge here did not exercise discretion, but relied on the CEPA waiver provision to deny Ballinger's amendment to add common law claims against DRPA's employees. That amendment should have been allowed.

We affirm the dismissal of plaintiffs' CEPA claims. We reverse the dismissal of the remaining counts of Ruggiero's complaint. We reverse the denial of Ballinger's motion to amend his complaint to add common law claims. Both cases should be handled by a single judge who should be chosen by the Assignment Judge of Camden County. Naturally, a painstaking comparison of the common law of New Jersey and Pennsylvania, like the one we engaged in as to CEPA and the Whistleblower Law, will have to be undertaken if DRPA contends that it is immune from such claims.

Affirmed in part; reversed and remanded in part.