121 A.3d 427

JAY ALPERT, PLAINTIFF, v. PORT AUTHORITY OF NEW YORK
AND NEW JERSEY; AND MICHAEL FEDORKO, INDIVIDUAL-
LY AND IN HIS CAPACITY AS PUBLIC SAFETY DEPART-
MENT/SUPERINTENDENT OF POLICE, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided May 8, 2015—Approved for Publication August 28, 2015.

*Robert B. Woodruff* for plaintiff.

*Cheryl N. Alterman* and *Margaret Taylor Finucane* for defendants (Port Authority of New York and New Jersey).

ROSE, LISA, J.S.C.

## SUMMARY OF ACTION

This matter comes before the court on a motion for summary judgment filed by defendants Port Authority of New York and New Jersey ("Port Authority") and Michael Fedorko ("Fedorko") (collectively, where applicable, "defendants,") seeking dismissal of the complaint with prejudice. The underlying claim arises from a former employee/employer relationship between plaintiff and the Port Authority, whereby plaintiff alleges that the Port Authority and Fedorko, his supervisor, retaliated against him in violation of the Conscientious Employee Protection Act, ("CEPA"), *N.J.S.A.* 34:19-3, and *Pierce v. Ortho Pharmaceutical Corp.*, 84 *N.J.* 58, 417 *A.*2d 505 (1980).

Defendants contend that summary judgment is appropriate on the grounds that: (1) as a single-state statute, CEPA is not applicable to the Port Authority or its employee, Fedorko; and (2) plaintiff's common law retaliation claims are duplicative of his CEPA claims, there is no substantially similar common law in the State of New York, and plaintiff failed to report a violation of public policy.[1]

The court has considered: the submission of defendants, filed March 13, 2015; the opposition of plaintiff, filed April 14, 2015;

---

[1] Defendants also seek dismissal of plaintiff's punitive damages claim. In his opposition brief, however, plaintiff concedes that he is not seeking punitive damages.

the reply of defendants, filed April 21, 2015; and oral argument held on May 8, 2015. For the reasons set forth below, defendants' motion is granted.

## OPINION

Plaintiff is a former Port Authority employee who worked in the Office of Emergency Management in Jersey City. On or about April 11, 2012, plaintiff reported to then-Director of Interstate Projects, David Wildstein, that Police Captain John Ferrigno ("Ferrigno") had taken photographs of police promotional exams and was conducting private training classes for prospective candidates. Plaintiff contends that he was terminated by the Port Authority in September 2012 in retaliation for having reported Ferrigno's misconduct.

The Port Authority is not an agency of a single state, but rather, a public corporate instrumentality of both New York and New Jersey. Created in 1921 by compact between New York and New Jersey, and consented to by Congress, the Port Authority originally was afforded immunity from suit. The compact was amended in 1951 to provide for "consent to suits, action, or proceedings of any form or nature at law, in equity or otherwise" ("1951 Amended Compact"). *N.J.S.A.* 32:1–157.

A bi-state agency is subject to New Jersey law when: "(1) the compact explicitly provides for unilateral state action; (2) both states have complementary or parallel legislation; or (3) the bi-state agency impliedly consented to a single-state's jurisdiction." *Ballinger v. Del. River Port Auth.,* 311 *N.J.Super.* 317, 324, 709 *A.*2d 1336 (App.Div.1998), *aff'd,* 172 *N.J.* 586, 800 *A.*2d 97 (2002) (citing *Int'l Union of Operating Eng. v. Del. River & Bay Auth.,* 147 *N.J.* 433, 445, 688 *A.*2d 569, *cert. denied,* 522 *U.S.* 861, 118 *S.Ct.* 165, 139 *L.Ed.*2d 108 (1997)). Accordingly, neither creator state may unilaterally impose additional duties, powers, or responsibility upon a bi-state agency. *Bunk v. Port Auth. of N.Y. & N.J.,* 144 *N.J.* 176, 184, 676 *A.*2d 118 (1996). Otherwise, the purpose for which the bi-state agency was formed would be

destroyed and would "lead to discord." *Bell v. Bell,* 83 *N.J.* 417, 424, 416 *A.*2d 829 (1980).

In the instant matter, plaintiff concedes that the Port Authority's compact does not provide expressly for unilateral action under CEPA.

As to whether New Jersey's CEPA statute is complementary or parallel to New York's whistleblower statute, *N.Y. Lab. Law* § 740 (2007)("NYWS"), plaintiff contends that any distinctions between the two statutes are insignificant because Port Authority mandates that its employees report misconduct and espouses a policy of protecting employees who do so. The Port Authority maintains that any similarities between the two states' statutes are immaterial without some form of agreement by both states. In the alternative, the Port Authority argues that CEPA and NYWS are not substantially similar.

At first blush, there exist similarities between the two statutes. Initially, CEPA and NYWS both apply to public and private employers. *See N.J.S.A.* 34:19-2 (defining "[e]mployer" as "any individual, partnership, association, corporation or any person or group of persons ..."); *see also N.Y. Lab. Law* § 740(1)(b) (defining "[e]mployer" as "any person, firm, partnership, institution, corporation, or association that employs one or more employees"). Secondly, the statute of limitations prescribed by each statute is one year. *N.J.S.A.* § 34:19-5; *N.Y. Lab. Law* 740(4)(a).

There are, however, significant differences between CEPA and NYWS as to scope, damages, and the right to trial by jury. Specifically with regard to scope, New Jersey's whistleblower statute encompasses a wider range of activities than that of its New York counterpart. Specifically, pursuant to CEPA, an employee need only have a reasonable belief that the employer violated a law, rule, regulation, or public policy; that is, the claimant need not prove an *actual* violation. *See Dzwonar v. McDevitt,* 177 *N.J.* 451, 462, 828 *A.*2d 893 (2003). Conversely, NYWS is not governed by a "reasonable belief" standard, but

rather requires an actual violation of the law, rule, or regulation. *See Bordell v. Gen. Elec. Co.*, 208 *A.D.*2d 219, 622 *N.Y.S.*2d 1001, 1002 (3d Dep't 1995) (interpreting *N.Y. Lab. Law* § 740(2)(a), which states that, "[a]n employer shall not take any retaliatory personnel action ... because such employee ... discloses ... an activity policy or practice of the employer *that is in violation of law rule or regulation* ...")(emphasis added). In addition, unlike CEPA, NYWS requires an actual and substantial present danger to the public health or safety, whereas CEPA does not. *Compare N.J.S.A.* 34:19–3 with *N.Y. Lab. Law* § 740; *see Leibowitz v. Bank Leumi Trust Co.*, 152 *A.D.*2d 169, 548 *N.Y.S.*2d 513, 517 (2d Dep't 1989); *see also Remba v. Fed'n Emp't & Guidance Serv.*, 149 *A.D.*2d 131, 545 *N.Y.S.*2d 140, 142 (1st Dep't 1989).

Moreover, as the Port Authority correctly indicates, CEPA and NYWS depart in terms of remedies available to the claimant. Most significantly, CEPA allows a claimant to recover punitive damages, whereas NYWS does not. *See, e.g. Granser v. Box Tree S. Ltd.*, 164 *Misc.*2d 191, 202, 623 *N.Y.S.*2d 977 (N.Y.Sup.Ct.1994).

Furthermore, unlike NYWS, CEPA affords a plaintiff a trial by jury. *Compare N.J.S.A.* 34:19–5 *with N.Y. Lab. Law* § 740(5); *see Scaduto v. Rest. Assoc. Indus., Inc.*, 180 *A.D.*2d 458, 579 *N.Y.S.*2d 381, 382 (1st Dep't 1992) (finding that it is the court itself that awards relief pursuant to *N.Y. Lab. Law* § 740(5)).

In light of the foregoing distinctions between CEPA and NYWS, the whistleblower laws of New York and New Jersey are not substantially similar, complementary, or parallel and, as such, the goals of the overriding legislative schemes of each state are distinct. Therefore, the Port Authority is not subject to CEPA on this basis.

Finally, as to whether the Port Authority impliedly consented to the exercise of single-state jurisdiction, implied consent is found when the bi-state agency voluntarily cooperates with New Jersey in the exercise of jurisdiction or agrees to meet the requirements of CEPA. *Ballinger, supra,* 311 *N.J.Super.* at 328,

709 *A.*2d 1336 (citing *Int'l Union of Operating Eng'rs, supra,* 147 *N.J.* at 445, 688 *A.*2d 569). Plaintiff's argument that the Port Authority impliedly consented to single-state legislation via the 1951 Amended Compact is misplaced. As the Port Authority contends, the 1951 Amended Compact provides, generally, that the Port Authority consented broadly to "suits, actions, or proceedings of any form or nature at law, in equity or otherwise." *N.J.S.A.* 32:1–157. This provision does not state specifically that the Port Authority agrees to meet the requirements of CEPA. Rather, it recognizes that the Port Authority will be subject to legislation by either state when both states concur that the legislation will apply. There is no evidence before the court showing a concurrence between New Jersey and New York that CEPA applies to the Port Authority. *Accord Ballinger,* 311 *N.J.Super.* at 329, 709 *A.*2d 1336. As such, the Port Authority is not subject to CEPA under an implied consent theory.

Since the Port Authority is not subject to CEPA, neither is Fedorko. *Id.* at 330, 709 *A.*2d 1336 (finding that because CEPA did not apply to Delaware River Port Authority, it did not apply to individual employees of that agency).

 Port Authority also challenges plaintiff's common law retaliation claims. Initially, the court finds that plaintiff did not waive his right to pursue both statutory and common law retaliatory discharge causes of action by asserting a CEPA claim. *Ibid.* (citing *Young v. Schering Corp.,* 141 *N.J.* 16, 660 *A.*2d 1153 (1995)).

As in *Ballinger,* this court has found that plaintiff is barred from pursing statutory CEPA claims against a bi-state agency because its compact does not authorize unilateral action, the legislation of both states is not complementary or parallel, and the Port Authority has not impliedly consented to the exercise of single-state jurisdiction. Since plaintiff pled an unavailable CEPA claim, no bar attaches with respect to other available claims of wrongful discharge. *Id.* at 332, 709 *A.*2d 1336. The inquiry then

becomes whether New Jersey's whistleblower common law is substantially similar to that of New York.

■ New York does not, however, recognize a common law cause of action for wrongful termination of an employee-at-will. *See Hassan v. Marriott Corp.*, 243 *A.D.*2d 406, 663 *N.Y.S.*2d 558, 560 (1st Dep't 1997). As such, plaintiff cannot advance a common law claim of retaliation. *See Ballinger, supra,* 172 *N.J.* at 599, 800 *A.*2d 97 (recognizing that court must determine whether New Jersey's whistleblower common law is substantially similar to that of New York so that New Jersey's application is not deemed unilateral imposition). Inasmuch as plaintiff does not have a common law cause of action for retaliation, the court need not reach whether plaintiff's termination violated a clear mandate of public policy pursuant to *Pierce, supra,* 84 *N.J.* at 72, 417 *A.*2d 505.[2]

For all of the foregoing reasons, defendants' motion for summary judgment is granted, and plaintiff's complaint is dismissed with prejudice.

[2] Although this court appreciates plaintiff's policy and equitable arguments, this court is constrained by the case law in this State prohibiting his claims for the reasons set forth herein.