**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3116-23

THOMAS RICCHIUTI,

    Plaintiff-Appellant,

v.

COUNTY OF MONMOUTH
and VANESSA HOWARD,

    Defendants-Respondents.

_____

Submitted June 3, 2025 – Decided June 25, 2025

Before Judges Firko and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3437-23.

Law Offices of Lawrence W. Luttrell, attorneys for appellant (Lawrence W. Luttrell, on the briefs).

Birdsall, Laughlin & Clark, LLC, attorneys for respondent County of Monmouth (David A. Laughlin, of counsel and on the brief; Robert M. Ford, on the brief).

Macnow & Papaleo, attorneys for respondent Vanessa Howard (Russell Macnow, on the brief).

PER CURIAM

In this employment action, plaintiff Thomas Ricchiuti appeals from two April 26, 2024 Law Division orders dismissing with prejudice his first amended complaint against defendants County of Monmouth (County) and Vanessa Howard (collectively defendants) for failure to state a claim upon which relief can be granted pursuant to Rule 4:6-2(e).[1]  Because plaintiff's first amended complaint adequately sets forth the fundaments of viable causes of action, we reverse and vacate both orders and remand.

I.

We summarize the facts alleged, giving plaintiff the benefit of every reasonable inference.  See Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021).  Plaintiff was employed by the County as a corrections officer and served for twenty-two years.  Howard was plaintiff's supervisor and a corrections officer with a sergeant rank.  In April 2022, while plaintiff and Howard were on duty at the Monmouth County Correction Institute (MCCI), an inmate suffered cardiac arrest from an apparent drug overdose.

---

[1] The court noted in its order that Howard filed a motion for summary judgment in lieu of filing an answer.  However, the record shows the court treated Howard's summary judgment motion as a motion to dismiss under Rule 4:6-2(e), and applied the motion to dismiss standard in its decision.

The inmate required immediate medical assistance from paramedics who arrived on the scene. While the paramedics were treating the inmate, who was lying unconscious on a gurney, they asked plaintiff to assist them in moving the inmate down the stairs so they could transport him to a hospital without having to stop cardiopulmonary resuscitation (CPR). The inmate was obese and unable to be safely lowered down the stairs while on a gurney without the assistance of two adults.

When plaintiff attempted to comply, Howard ordered him not to do so. According to plaintiff, Howard used her arm to block plaintiff and told the paramedics, "[w]e don't do that here." Consequently, the paramedics stopped administering CPR to the inmate during the time they transported him down the stairs. Plaintiff alleges the inmate passed away later that day as a result of the alleged incident.

After the incident, plaintiff filed a written report[2] summarizing the events of the day. Plaintiff claims he authored the report because he reasonably believed that Howard's conduct violated a law, rule, regulation, or public policy. Plaintiff alleges that defendants began retaliating against him after he reported the events from April 2022.

---

[2] Plaintiff's written report is not contained in the appendix.

A-3116-23

By way of example, in October 2022, plaintiff claims that Howard ordered him to place a personal protective equipment (PPE) mask over his face even though he was not required to do so under MCCI's policy at the time. Plaintiff complied with Howard's request, but she nonetheless wrote him up for insubordination.

Plaintiff alleges the County then gave him an "ultimatum" to either agree to retire or else he would be immediately terminated based on the insubordination charge. Plaintiff requested to review Howard's report concerning the insubordination charge, but the County denied his request. In addition, plaintiff contends the County informed him that its offer to allow him to retire would be rescinded, and he would be terminated immediately, if he was provided with Howard's report.

Plaintiff requested permission from the County to consult with an attorney, but claimed the County refused to allow him the opportunity to do so. Plaintiff alleged the County advised him that if he left its office or called an attorney before accepting the ultimatum, its offer would be rescinded, and he would be terminated. Plaintiff further alleges he was required to sign a Separation Agreement and Complete Release (Agreement), waiving any claims against defendants without the advice of counsel.

A-3116-23

On October 20, 2022, plaintiff and the County entered into the Agreement, which states in relevant part:

. . .

> WHEREAS, on October 2, 2022 an incident occurred between [plaintiff] and a supervisor that is currently under review by the management of the MCCI for the potential imposition of disciplinary action, although no final determination has yet been reached on the filing of any disciplinary charges or if such charges were to be filed, the proposed penalty for same; and,
>
> WHEREAS, during the course of the aforementioned review of the October 2, 2022 incident, [plaintiff] advised the County of his desire to separate from his County service, and under the circumstances the County agrees that a prompt and amicable separation from service is the most appropriate resolution to this matter, provided it is subject to the terms set forth in the Agreement; and,
>
> WHEREAS, by taking this action, [plaintiff] is not admitting in any way that disciplinary action whatsoever is warranted relating to the October 2, 2022 incident, but rather, given his age and time in service he is eligible to apply for retirement with the New Jersey Police and Firemen's Retirement System ("PFRS") and desires to do so effective November 1, 2022; and,
>
> WHEREAS, given the outstanding employment matter referenced above, the parties believe it is in their mutual best interest to fully and finally resolve all outstanding issues with respect to [plaintiff]'s County employment via a negotiated agreement.

. . . .

In addition, plaintiff agreed to the following terms and conditions set forth

in the Agreement:

1.    RESIGNATION OF [PLAINTIFF]; TERMS
      AND CONDITIONS.

                    . . . .

a.    [Plaintiff] agrees that his execution of this
      Agreement shall represent his irrevocable
      resignation from employment with [the]
      County, effective at the close of business
      on Monday, October 31, 2022. No further
      documents shall need to be executed in
      order to effectuate [plaintiff's] resignation.
      This resignation shall be recorded as a
      "resignation in good standing" as
      established by the regulations of the Civil
      Service Commission as set forth at
      [N.J.A.C.] 4A:2-6.3.

                    . . . .

c.    It is understood that [plaintiff] is eligible
      for [and] intends to apply for retirement
      from PFRS, effective November 1, 2022.

                    . . . .

f.    Based upon [plaintiff's] decision to
      conclude his . . . employment pursuant to
      the Agreement, [the] County agrees to
      administratively close the ongoing review
      of the October 2, 2022 incident without
      making any final determination as to

6

whether any disciplinary action was warranted, or if so, the appropriate penalty for same. [Plaintiff] acknowledges that [the] County had reasonable and sufficient cause to initiate a review of his actions on that date and its decision to do so was made in good faith and not for any improper purpose. However, by executing the Agreement, he is not admitting in any way that his conduct justified the imposition of any disciplinary action against him.

. . . .

2. COMPLETE RELEASE AND RELINQUISHMENT OF CLAIMS.

In consideration of the settlement hereinabove, . . . [plaintiff], along with his successors, assigns, heirs, representatives and estates, agrees to irrevocably and unconditionally relinquish any and all causes of [a]ction, demands or claims, including claims for attorney's fees and costs, [plaintiff] had, has or may have from the beginning of time up to the date this Agreement is executed against the County . . . regardless of whether such claims are presently known or unknown to [plaintiff]. This full and unconditional relinquishment and release of claims includes, but is not limited to, any causes of action, demands or claims relating in any way to [plaintiff's] employment with [the] County, including the events, information, or disputes giving rise to this matter, or the Agreement.

. . . .

7

This full release also specifically includes, but is not limited to, matters arising under federal, state or local laws, statutes, regulations, ordinances, orders or policies, including, but not limited to, . . . the New Jersey Conscientious Employee Protection Act (CEPA), [N.J.S.A. 34:19-1 to -14], the New Jersey Law Against Discrimination (NJLAD), [N.J.S.A. 10:5-1 to - 50], . . . and the New Jersey Civil Rights Act [(NJCRA)], [N.J.S.A. 10:6-1 to -2].

. . . .

The Agreement also contains an "Acknowledgment," which states plaintiff had the right to discuss all aspects of the Agreement "with his chosen representation," and that he is "entering into this Agreement knowingly and voluntarily . . . ." Plaintiff also acknowledged in the Agreement that he was given "a reasonable and sufficient amount of time" to consider the Agreement before signing it.

The Agreement states the following at paragraph 18(a) through (c):

(a)    [Plaintiff] agrees and acknowledge[s] that [he] was represented by and consulted with representation of [his] choosing throughout the negotiation [and] execution of this Agreement and Release. [He] further acknowledge[s] and agree[s] that he was given a reasonable and sufficient amount of time within which to consider the Agreement and Release before signing it.

8

> (b)   [Plaintiff] agrees and acknowledges that [he] [has] the right to reflect upon this Agreement and Release for a period of twenty-one . . . days before executing it, and [he] will have an additional period of seven days after executing the Agreement and Release to revoke it . . .
>
> (c)   [Plaintiff] understand[s] and acknowledge[s] that if [plaintiff] sign[s] this Agreement and Release along with the waiver attached hereto, prior to the expiration of . . . twenty-one-day review, [plaintiff is] voluntarily and knowingly waiving the twenty-one-day review . . . .

Plaintiff claims he was required to sign the Agreement under duress,[3] out of fear he would be terminated without pay.  He did not consult with an attorney before signing the document.  Thus, plaintiff alleged he received a significantly lower monthly pension than he would have received had he waited three more years to retire, was denied the opportunity to earn overtime pay, apply for a promotion, and lost medical benefits for himself and his family.  Due to defendants' actions, plaintiff alleged he was subjected to humiliation, severe mental and emotional distress, and embarrassment among his co-workers.

On November 1, 2023, plaintiff was separated from his employment with the County.  On January 30, 2024, he filed a notice of tort claim with the County.

---

[3]   We use the terms "duress" and "economic duress" interchangeably in our opinion.

On October 31, 2023, plaintiff filed an initial complaint alleging violations of CEPA (count one); NJLAD (count two); the NJCRA (count three); and declaratory relief to set aside the Agreement (count four). The next day, on November 1, 2023, plaintiff filed a first amended complaint—the operative pleading here—alleging the same four counts.[4] The County moved to dismiss in lieu of filing an answer to the first amended complaint, and Howard moved for summary judgment, which as stated, was treated by the court as a motion to dismiss.

In support of its motion to dismiss, the County argued plaintiff failed to raise a genuine issue of material fact that the Agreement was the product of duress. The County contended that plaintiff failed to identify a wrongful or unlawful act or threat, and he was not deprived of his "unfettered will." The County asserted that plaintiff initialed every page of the Agreement and signed it, acknowledging he was giving up certain rights, including the opportunity to have the Agreement reviewed by his union representative and an attorney of his choosing. The County argued the Agreement was supported by consideration

---

[4] The first amended complaint revised the years pertaining to the alleged incident involving the inmate and alleged retaliation. Plaintiff also added references to the New Jersey Civil Service Act, N.J.S.A. 11A:2-13, and portions of the collective bargaining agreement between himself and the County.

because the County agreed to administratively dismiss the insubordination charge in exchange for plaintiff's retirement and his release of any claims.

The County pointed out that the Agreement provided plaintiff with the "unilateral option" to revoke the Agreement for a period of seven days after signing, which he did not do. The County argued that plaintiff's claim of duress lacked merit because he did not revoke the Agreement within seven days after executing it.

Howard argued that the Agreement was enforceable as a matter of law warranting dismissal of the first amended complaint. Howard contended that plaintiff voluntarily agreed to terminate his position as a corrections officer and not pursue legal action against her or the County in exchange for the County not pursuing the insubordination charge. Howard asserted that plaintiff's claim of duress contravenes the plain language of the Agreement, which provided he had the "right and opportunity to discuss all aspects of this Agreement with his chosen representation prior to entering into it." Howard argued the Agreement also states plaintiff represented that he "in fact [had] consulted with an attorney," and no duress or undue influence was brought on him by the County.

Plaintiff opposed both motions. In his counter-statement of material facts, plaintiff claimed he was "forced" to retire due to defendants' actions. Plaintiff

11

also submitted a certification in opposition to Howard's motion stating that at the time the County made its "ultimatum" to him, the County "refused" his request "for permission to consult with legal counsel."

Plaintiff also certified the County advised him that "if he left the office or called a lawyer before accepting [its] ultimatum, that the offer to allow [him] to retire was off the table," and he would be "terminated from employment immediately." Plaintiff certified he signed the Agreement based on the ultimatum, and under "duress" caused by defendants, "without the benefit of legal counsel beforehand." Plaintiff stated he did not draft any part of the Agreement or negotiate any of its terms. Plaintiff certified that the Agreement was procured by the County through "coercion, deception, fraud, undue pressure, or unseemly conduct," or other circumstances created by the County. Plaintiff retained counsel after his separation from employment.

On April 26, 2024, the court conducted oral argument on defendant's motions to dismiss. In an oral opinion following argument that day, the court granted both motions. The court found plaintiff was not "being disciplined for what happened with the inmate" back in April 2022, but for his "insubordination for failing to put on [PPE]."

The court determined plaintiff could not establish duress based on the allegations in the first amended complaint. The court reasoned that plaintiff's alleged conduct in the first amended complaint "doesn't make sense as to why he would have felt compelled to sign [the Agreement] under duress," because he had twenty-one days to sign it and seven days to revoke it.

The court stated there was adequate consideration in the Agreement between plaintiff and the County because the County administratively closed out the ongoing review of the October 2, 2022 incident without making a final determination in exchange for plaintiff ending his employment. The court determined that plaintiff reviewed the Agreement because "he initialed every single page" and "then signed it at the end." In addition, the court found there was no assertion in the first amended complaint that plaintiff "didn't know how to read" or "lacked the capacity to understand what he was signing."

The court determined that plaintiff's execution of the Agreement meant that he was advised by his union representative and counsel of his choosing as stated in the Agreement. The court found plaintiff was given "reasonable and sufficient" time to consider the Agreement before signing it based on terms set forth in the Agreement. In addition, the court held by signing the Agreement, plaintiff released the County from "statutory provisions," including his CEPA

13

and NJLAD claims. Two memorializing orders were entered. This appeal followed.

Before us, plaintiff primarily makes two arguments. First, plaintiff contends the court erred in granting defendants' motions to dismiss under Rule 4:6-2(e) because the court considered facts beyond the first amended complaint and failed to draw all reasonable inferences in his favor.

Second, plaintiff argues that even if the court had treated the motions to dismiss as motions for summary judgment under Rule 4:46-2, his first amended complaint should have survived dismissal as there are genuine issues of material fact. Plaintiff contends the Agreement is unenforceable because it lacks consideration, he signed it under economic duress, and he never ratified it or waived any claims against defendants.

II.

A.

We begin our discussion with a review of the principles governing our analysis. Rule 4:6-2 provides:

> Every defense, legal or equitable, in law or fact, to a claim for relief in any complaint, counterclaim, cross-claim, or third-party complaint shall be asserted in the answer thereto, except that the following defenses, . . . may at the option of the pleader be made by motion,

with briefs: . . . (e) failure to state a claim upon which relief can be granted . . . .

[R. 4:6-2(e).]

"Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo." Baskin, 246 N.J. at 171 (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). Thus, "we owe no deference to the trial judge's conclusions." State ex rel. Comm'r of Transp. v. Cherry Hill Mitsubishi, Inc., 439 N.J. Super. 462, 467 (App. Div. 2015) (citing Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011)).

"At this preliminary stage of the litigation the [c]ourt is not concerned with the ability of [a] plaintiff[] to prove the allegation contained in the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (citing Somers Constr. Co. v. Bd. of Educ., 198 F.Supp. 732, 734 (D.N.J. 1961)). "For purposes of analysis [a] plaintiff [is] entitled to every reasonable inference of fact." Ibid. (citing Indep. Dairy Workers Union v. Milk Drivers Loc. 680, 23 N.J. 85, 89 (1956)). "The examination of a complaint's allegations of fact . . . should be one that is at once painstaking and undertaken with a generous and hospitable approach." Ibid.

In undertaking our review,

15

it is essential to canvass the complaint to determine whether a cause of action can be found within its four corners. In so doing, we must accept the facts asserted in the complaint as true. A reviewing court must search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned from an obscure statement of claim, opportunity being given to amend if necessary. Accordingly, all reasonable inferences are given to plaintiff. Courts should grant these motions with caution and in the rarest instances.

[Ballinger v. Del. River Port Auth., 311 N.J. Super. 317, 321-22 (App. Div. 1998) (emphasis added) (internal quotation marks and citations omitted) (alteration in original).]

We apply these well-established principles to the matter before us.

B.

Plaintiff argues the court erred in finding his allegations were insufficient to support his claim of economic duress and lack of consideration. Plaintiff contends the court misapplied Rule 4:6-2(e) because it relied on alleged facts outside the "four corners" of the first amended complaint and failed to draw all reasonable inferences in his favor. In particular, plaintiff asserts defendants went outside the pleadings by introducing the terms of the "purported release and waiver of claims," which is contained in the Agreement prepared by the County. We are convinced the court improperly granted defendants' motion to

dismiss. Plaintiff alleged viable causes of action for economic duress and lack of consideration.

In count four of the first amended complaint, plaintiff alleges the Agreement should be set aside because it "was achieved through coercion, deception, fraud, undue pressure, or unseemly conduct," and therefore, he was "not competent to voluntarily consent thereto."

"Generally, a settlement agreement is governed by principles of contract law." Brundage v. Est. of Carambio, 195 N.J. 575, 600-01 (2008) (quoting Thompson v. City of Atl. City, 190 N.J. 359, 379 (2007)). "An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Ibid. (quoting Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1983)). "It is not the function of the court to rewrite or revise an agreement when the intent of the parties is clear." Quinn v. Quinn, 225 N.J. 34, 45 (2016) (citing J.B. v. W.B., 215 N.J. 305, 326 (2013)). Thus, "when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement . . . ." Ibid.

However, "there are circumstances under which economic pressure may invalidate an otherwise enforceable contract." Cont'l Bank of Pa. v. Barclay Riding Acad., Inc., 93 N.J. 153, 175 (1983). "Economic duress occurs when the party alleging it is the victim of a wrongful or unlawful act or threat, which deprives the victim of his unfettered will." Quigley v. KPMG Peat Marwick LLP, 330 N.J. Super. 252, 263 (App. Div. 2000). "[T]he decisive factor is the wrongfulness of the pressure exerted on the party seeking to void the contract." Cont'l Bank of Pa., 93 N.J. at 177. "The term 'wrongful' in this context encompasses more than criminal or tortious acts, for conduct may be legal but still oppressive." Ibid. "In addition, duress entails inadequate consideration." Quigley, 330 N.J. Super. at 263.

"The situations are so varied that one cannot be sure of a simple formula" for determining economic duress. Cont'l Bank of Pa., 93 N.J. at 177 (quoting West Park Ave., Inc. v. Twp. of Ocean, 48 N.J. 122, 129 (1966)). However, the following generalizations are relevant in deciding if there was duress:

> [w]here there is adequacy of consideration, there is generally no duress . . . . Whenever a party to a contract seeks the best possible terms, there can be no rescission merely upon the grounds of "driving a hard bargain." Merely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed

18

> to or caused by the one accused of coercion . . . .  Under this rule, the party exerting pressure is scored only for that for which he [or she] alone is responsible.
>
> [Ibid. (citation omitted).]

Plaintiff alleges he was compelled to sign the Agreement under economic duress as the provider for his family, which includes a special needs child. Plaintiff claims he was denied due process under the collective bargaining agreement, the New Jersey Civil Service Act, and the United States Constitution. He also maintains he was threatened, and the Agreement lacks consideration because he was already eligible to retire because of his twenty years of service.

Based upon our de novo review, we are convinced the court improperly granted defendants' motion to dismiss.  Plaintiff alleged a claim of economic duress.  Having viewed plaintiff's first amended complaint with the required liberality at the motion to dismiss stage, we are persuaded dismissal with prejudice was premature.  While the Agreement states it was not the product of duress, the factual contention that the County wanted to terminate plaintiff after twenty years of service over one incident of purported insubordination for not wearing PPE adds credence to plaintiff's argument that he was pressured to resign.

The court failed to give plaintiff the benefit of every favorable inference under Rule 4:6-2(e). Moreover, the court improvidently went beyond the confines of the first amended complaint in rendering its decision. The court narrowly focused on whether the Agreement plaintiff signed is enforceable as written and did not analyze each statute pled by plaintiff to determine the legal sufficiency of the first amended complaint. Discovery needs to be conducted to develop a more robust record addressing plaintiff's allegations. We therefore reverse the order dismissing with prejudice of plaintiff's first amended complaint and vacate both April 26, 2024 orders under review.

Reversed, vacated, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3116-23